**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JOSEPH DURAN, | ) | NO. CV 12-10599 SS |
| Petitioner, | ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) | **DENYING PETITION FOR WRIT OF** |
| DAVID LONG, Warden, | ) | **HABEAS CORPUS WITH PREJUDICE** |
| Respondent. | ) | |

**I.**

**INTRODUCTION**

On December 11, 2012, Joseph Duran ("Petitioner"), a California state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 and a Memorandum of Points and Authorities ("Pet. Mem."). On March 27, 2013, Respondent filed an Answer to the Petition and a Memorandum of Points and Authorities. Respondent also lodged the relevant portions of the record from Petitioner's state court proceedings, including a two-volume copy of the Clerk's Transcript ("CT") and a three-volume copy of the

Reporter's Transcript ("RT") from Petitioner's trial. On May 17, 2013, Petitioner filed a Reply. All parties have consented to the jurisdiction of the undersigned Magistrate Judge for final disposition of this matter. Accordingly, for the reasons discussed below, the Petition is DENIED and this action is DISMISSED with prejudice.

## II.

### PRIOR PROCEEDINGS

On March 10, 2011, a Los Angeles County Superior Court jury convicted Petitioner of second degree robbery in violation of California Penal Code ("Penal Code") section 211, second degree commercial burglary in violation of Penal Code section 459, attempted second degree robbery in violation of Penal Code sections 211/664, and assault with a firearm in violation of Penal Code section 245. (CT 308-11, 328-30; RT 1201-03). The jury also found it to be true that a principal was armed with a handgun during the commission of the offenses. (CT 308-11, 328-30; RT 1201-03). On April 8, 2011, the trial court sentenced Petitioner to eleven years in state prison. (CT 370-73, 378-79; RT 1509-11).

Petitioner appealed his conviction and sentence to the California Court of Appeal, which affirmed the judgment in an unpublished decision filed on April 25, 2012. (Lodgments A-D). Petitioner then filed a petition for review, which the California Supreme Court summarily denied on July 25, 2012. (Lodgments E-F).

\\
\\
\\

# III.

# FACTUAL BACKGROUND

The following facts, taken from the California Court of Appeal's written decision on direct review, have not been rebutted with clear and convincing evidence and must, therefore, be presumed correct. 28 U.S.C. § 2254(e)(1); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

> On April 6, 2011, Albert Garcia met with [co-defendant Kekai] Larsen and [Petitioner] in Rosemead. They asked Garcia to drive them to the Santa Anita Mall. [Petitioner and Larsen] got into Garcia's car, along with a female. As the vehicle passed a business on Gidley Street in El Monte, [Petitioner and Larsen] told Garcia to stop because they wanted to "check it out." [Petitioner] got out of the car and looked at a large air compressor in the parking lot in front of the business. He unhooked a hose from the compressor. Larsen got out of the car. The business owner, Henry Franco, came outside and confronted them. [Petitioner] and Larsen approached him aggressively. Larsen demanded Franco's wallet. When Franco refused, Larsen lifted his shirt and showed him a handgun in his waistband. Franco handed over his wallet, and asked if he could have his wallet and identification cards back after the money was removed. He wrestled with Larsen to retrieve them. In the meantime, [Petitioner] went into the building and into Franco's office. When [Petitioner] emerged from the building, he and Larsen ran back to the car and Larsen told Garcia, "Take off."

Garcia saw that Larsen had a pistol on his lap. Franco wrote down the license plate number of the car, and took the compressors inside the building. He discovered that his office had been ransacked and his cell phone was missing. In addition, $153 was taken from his wallet.

Garcia continued to drive the car to Arcadia. As they were driving on a residential street, they saw Qiu Qim Sheng walking her dog. [Petitioner] said, "I want to get that dog." Garcia made a U-turn and drove past Sheng. [Petitioner] jumped out of the car, grabbed the leash out of Sheng's hand, and ran down the street with the dog. John Gibbs was exiting a residence on the street and saw [Petitioner] take the dog. Gibbs chased [Petitioner] for 50 or 60 yards and [Petitioner] let go of the leash and continued to run. Garcia pulled the car up. According to Garcia, Larsen got out of the car to assist [Petitioner]. Garcia heard gunshots coming from behind the car. Both [Petitioner] and Larsen got in the car and Garcia drove off. Gibbs said he saw [Petitioner] dive into the rear seat of the car and then a person in the front passenger seat leaned out of the car and fired at Gibbs, striking him in the leg. Walter Quintanilla, who was driving down the street, saw a man running towards a car. The man dove into the rear passenger seat and then an arm came out of the car. Quintanilla heard a gunshot. He could not tell whether the person who jumped in the car was the one who put his arm out

of the window.  He wrote down the license plate number of the car.

Larsen and [Petitioner] told Garcia to drive them to El Sereno.  [Larsen, Petitioner] and the female got out of the car and Larsen threw a bag of methamphetamine towards Garcia.

When Garcia arrived home at approximately 7:10 p.m. that evening, he was detained by police.  They found a glass methamphetamine pipe in the car and methamphetamine in his pocket.  Garcia admitted that he had used methamphetamine that day.  Garcia told a detective that when he first picked up [Petitioner and Larsen, Petitioner] sat in the front passenger seat and Larsen sat in the rear seat on the driver's side.  After [Petitioner and Larsen] took Franco's wallet, [Petitioner] got in the front seat again.  Larsen was the only one with a gun.  Garcia told police that [Petitioner] and Larsen were staying at a hotel about five miles away from where the dog had been taken.  Officers responded to the hotel and detained [Petitioner and Larsen].  Franco identified both of them at a field showup and said that Larsen was the one with the gun.  The next day at a photographic lineup, Franco did not identify either one.  Police performed gunshot residue tests on [Petitioner and Larsen's] hands and the results were consistent with firing, touching, or being around a firearm.

     At the preliminary hearing, Franco identified [Petitioner] but not Larsen. At trial, Franco identified both men and Larsen as the one with the gun. He said he did not identify Larsen at the preliminary hearing because he feared for his life.

     At trial, Garcia testified that the female sat in the front passenger seat of his car. He admitted that he had pled guilty to two misdemeanor counts and one count of being an accessory after the fact. He acknowledged that he had entered into an agreement with the district attorney's office for leniency in exchange for testifying.

     Gibbs testified that the person in the front passenger seat leaned out and fired at him. He first described the shooter as a "he," but could not identify anyone present in court as the shooter. On cross-examination, he could not say for sure whether the shooter was a male or female.

     Neither [Petitioner nor Larsen] testified. Larsen called one witness, Leandra Munoz, who testified that she saw a Hispanic man wearing a blue shirt taking a dog from a woman about 20 feet away. She said the man jumped into a car and fired a gun at someone chasing him. She could not identify either [Petitioner or Larsen] in court.

(Lodgment D at 2-4).

# IV.

# PETITIONER'S CLAIMS

The Petition raises two grounds for federal habeas relief. In Ground One, Petitioner contends that the trial court erred when it failed to stay his commercial burglary sentence pursuant to Penal Code section 654.[1] (Pet. at 5; Pet. Mem. at 7-9). In Ground Two, Petitioner contends that he received ineffective assistance of counsel when his trial counsel failed to object to the trial court's erroneous reasoning in sentencing Petitioner to consecutive sentences for robbing Franco and burglarizing his business. (Pet. at 5; Pet. Mem. at 10-12).

# V.

# STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant Petition because Petitioner filed it after AEDPA's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). "By its terms [AEDPA] bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 784, 178

---

[1] Penal Code section 654(a) provides, in pertinent part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

L. Ed. 2d 624 (2011). Under AEDPA's deferential standard, a federal court may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

Petitioner raised his pending claims in his petition for review to the California Supreme Court, which denied these claims without comment or citation to authority. (Lodgments E-F). The California Supreme Court's discretionary decision to deny Petitioner's petition for review without comment or citation to authority was not a decision on the merits. See Greene v. Fisher, __ U.S. __, 132 S. Ct. 38, 45, 181 L. Ed. 2d 336 (2011) (state supreme court's decision not to hear an appeal is not an adjudication on the merits under § 2254(d)(1)); Cannedy v. Adams, 706 F.3d 1148, 1158 (9th Cir. 2013) ("[D]enials of discretionary review are not decisions on the merits[.]"), as amended, 2013 WL 3744048 (9th Cir. 2013), pet. for cert. filed, 82 USLW 3247 (Oct. 13, 2013); Camper v. Workers' Comp. Appeals Bd., 3 Cal. 4th 679, 689 n.8, 12 Cal. Rptr. 2d 101 (1992) ("[W]e reiterate the well-established rule in this state that a denial of a petition for review is not an expression of opinion of the Supreme Court on the merits of the case."). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991); see also Cannedy, 706 F.3d at 1159 ("[W]e conclude that Richter does not change our practice of 'looking through' summary denials to the last reasoned decision – whether those denials are on the merits or denials of discretionary

review." (footnote omitted)). Thus, in addressing Petitioner's claims, the Court will consider the reasoning of the California Court of Appeal, which issued a written decision addressing those claims. <u>Berghuis v. Thompkins</u>, 560 U.S. 370, __, 130 S. Ct. 2250, 2259, 176 L. Ed. 2d 1098 (2010).

## VI.
## DISCUSSION

**A. Petitioner Is Not Entitled To Habeas Relief For the Alleged Violation Of Penal Code Section 654**

A federal court, in conducting habeas review, is limited to deciding whether a state court decision violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); <u>Swarthout v. Cooke</u>, __ U.S. __, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) (per curiam); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Federal habeas corpus relief "does not lie for errors of state law." <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); <u>McGuire</u>, 502 U.S. at 67, 112 S. Ct. 475; <u>see also</u> <u>Dugger v. Adams</u>, 489 U.S. 401, 409, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."); <u>Pulley v. Harris</u>, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.").

In Ground One, Petitioner contends that the trial court erred when it sentenced him to the high term of five years for the robbery of

Franco and also sentenced him to a one year consecutive sentence for the commercial burglary of Franco's business since the burglary sentence should have been stayed under Penal Code section 654. (Pet. at 5; Pet. Mem. at 7-9).  However, this state law allegation fails to state a cognizable ground for federal habeas corpus relief.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus."); Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (petitioner's claim that sentence violated Penal Code section 654 was not cognizable on federal habeas corpus review).  Nor is this result changed by Petitioner's cursory references to due process and a fair trial.[2]  (See Pet. Mem. at 7; Reply at 3); see also Langford v. Day, 110

---

[2]   Under narrow circumstances, the misapplication of state sentencing law may violate due process. See Richmond v. Lewis, 506 U.S. 40, 50, 113 S. Ct. 528, 121 L. Ed. 2d 411 (1992) ("[T]he federal, constitutional question is whether [the sentencing error] is 'so arbitrary or capricious as to constitute an independent due process' . . . violation." (citation omitted)); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication if its own sentencing laws does not justify federal habeas relief.").  However, even if the Court ignored Petitioner's citation of only state law and interpreted Petitioner's vague references to due process and a fair trial as raising a federal constitutional claim, and even setting aside Petitioner's failure to exhaust Ground One as a federal constitutional claim, (see Lodgment E), Ground One would still fail.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  As detailed below, the California Court of Appeal determined that the trial court appropriately applied state sentencing law, and as this Court is bound by the California Court of Appeal's interpretation of state law, Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam); Hicks on behalf of Feiock v. Feiock, 485 U.S. 624, 629-30 & n.3, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988), Petitioner cannot even show a misapplication of state law, let alone a due process violation.

F.3d 1380, 1389 (9th Cir. 1997) ("Langford may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process."); Moore v. Chrones, 687 F. Supp. 2d 1005, 1040-41 n.27 (C.D. Cal. 2010) ("[M]erely placing [a due process] label on an alleged state law sentencing violation is insufficient to state a cognizable federal constitutional claim.").

**B.   Petitioner Is Not Entitled To Habeas Relief On His Ineffective Assistance Of Counsel Claim**

In Ground Two, Petitioner alleges he received ineffective assistance of counsel when his trial counsel failed to object to the trial court's erroneous reasoning in sentencing Petitioner to consecutive sentences for robbing Franco and burglarizing his business. (Pet. at 5; Pet. Mem. at 10-12).

**1.   Background**

The California Court of Appeal set forth the following facts underlying Petitioner's ineffective assistance of counsel claim:

> [Petitioner] was sentenced to five years for the robbery of Franco and a consecutive term of eight months for the commercial burglary of Franco's business and another four months for the principal armed allegation. After imposing a consecutive term for the burglary, the court stated, "The reason the court is imposing consecutive sentences is after looking at California Rules of Court 4.125, the crimes were

>   predominantly independent of each other, the crimes involved
>   separate acts of violence, and the crimes were committed at
>   different times and different places." [Petitioner's]
>   counsel did not object. [Petitioner's] counsel had filed a
>   sentencing memorandum that did not address the imposition of
>   consecutive terms.

(Lodgment D at 8).

**2.  California Court of Appeal's Opinion**

The California Court of Appeal concluded that Petitioner was properly sentenced to consecutive sentences under Penal Code section 654 and, therefore, Petitioner's trial counsel was not ineffective in failing to object to Petitioner's consecutive sentences for robbery and burglary:

>   The record reflects that Garcia was told to pull over by
>   Larsen when they were on their way to the Santa Anita Mall.
>   Larsen told Garcia to stop while on Gidley Street and
>   [Petitioner] got out of the car to look at the air
>   compressors which were in the parking lot in front of the
>   building. While [Petitioner] and Larsen were in the process
>   of unhooking the hoses, Franco came out and verbally
>   confronted the two men. They then demanded his wallet, and
>   when Franco refused, Larsen showed him a handgun in his
>   waistband. Franco testified that [Petitioner] went inside
>   the building and into Franco's office while Larsen was

12

demanding Franco's wallet.  While Franco gave his wallet to Larsen, [Petitioner] came out of the office, and both men left.  It was then that Franco determined that his office had been ransacked and a cell phone had been taken.

"Penal Code section 654 prohibits punishment for two crimes arising from a single indivisible course of conduct.  If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once.  If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct.  The defendant's intent and objective are factual questions for the trial court, and we will uphold its ruling on these matters if it is supported by substantial evidence."

\*   \*   \*

[Petitioner and Larsen] stopped at Franco's business to steal the compressors that were outside of the building. While they were in the process of moving the compressors, Franco came out and confronted them.  It was then that [Petitioner and Larsen] formed the intent to take Franco's wallet and demanded that he relinquish it.  When Franco refused, Larsen displayed his gun and repeated the demand. While Franco was being detained, [Petitioner] took the opportunity to go inside the building and into the office,

13

obviously looking for something of value. There is no evidence [Petitioner] knew Franco's office existed prior to his entry into the building. Nor is there evidence that [Petitioner] entered the building to facilitate the taking of Franco's wallet.

\* \* \*

. . . [Petitioner and Larsen] had accomplished the robbery and did not form the intent to burglarize the office until Franco was immobilized through Larsen's use of force. There is substantial evidence that [Petitioner and Larsen] had three separate objectives, each formed independently as the events unfolded. First, they intended to steal the compressors. Second, when Franco emerged from the building, they formed the intent to rob him. Third, [Petitioner] entered the building for the purpose of determining whether other property could be seized. Based on the evidence, the trial court reasonably concluded that burglarizing the building was an afterthought brought about by the confrontation with Franco.

\* \* \*

As we have discussed, Franco's cell phone was not taken during the course of the robbery. The burglary occurred at a time and place separate from the robbery, the entry into the office did not facilitate the robbery, and [Petitioner and Larsen] had multiple, independent criminal objectives. If [Petitioner and Larsen] had intended from the outset to invade Franco's building in search of property, they would have done so instead of attempting to take the compressors.

14

> The imposition of consecutive sentences for the burglary and robbery was proper.[Fn. 2]
>
> Fn. 2. Given our conclusion, [Petitioner's] claim that counsel was ineffective for failing to object to the sentence necessarily fails.

(Lodgment D at 8-11 (citations omitted)).

**3.   Analysis**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." Yarborough v. Gentry, 540 U.S. 1, 4, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (per curiam). To succeed on an ineffective assistance of trial counsel claim, a habeas petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Williams v. Taylor, 529 U.S. 362, 390, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner bears the burden of establishing both components. Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687. "'To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Richter, 131 S. Ct. at 787 (citation omitted); Premo v. Moore, __ U.S. __, 131 S. Ct. 733, 739, 178 L. Ed. 2d 649 (2011). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364,

372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993); Williams, 529 U.S. at 393 n.17.  A court need not determine whether counsel's performance was deficient before examining the prejudice the alleged deficiencies caused the defendant.  See Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 145 L. Ed. 2d 746 (2000) ("'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed'" (quoting Strickland, 466 U.S. at 697)).

Here, the California Court of Appeal concluded that the trial court's imposition of consecutive sentences for Petitioner's burglary and robbery convictions was a proper application of California law, and this Court must defer to the California Court of Appeal's determination of state law.  See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Hicks on behalf of Feiock v. Feiock, 485 U.S. 624, 629-30 & n.3, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988) ("We are not at liberty to depart from the state appellate court's resolution of these issues of state law.  Although petitioner marshals a number of sources in support of the contention that the state appellate court misapplied state law on these two points, the California Supreme Court denied review of this case, and we are not free in this situation to overturn the state court's conclusions of state law.").  Accordingly, because Petitioner was properly sentenced under California law, Petitioner cannot show either that trial counsel was deficient or that he was in any manner prejudiced because trial counsel failed to make a futile objection to Petitioner's sentence.  See

Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012) ("It should be obvious that the failure of an attorney to raise a meritless claim is not prejudicial[.]"), cert. denied, 133 S. Ct. 2831 (2013); Rupe v. Wood, 93 F.3d 1434, 1444-45 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").

Accordingly, the California courts' rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VII.
## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED. IT IS ORDERED that Judgment be entered dismissing this action with prejudice.

DATED: December 13, 2013

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE